UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRUCE ROSS,

    Plaintiff,

    v.                                              Case No. 10-C-54

ESTATE OF BERNARD MARDEN,

    Defendant.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS IN PART (DOC. #9),
AND DENYING DEFENDANT'S MOTION TO STAY PENDING
LITIGATION IN STATE COURT (DOC. #9)

Bruce Ross brought this suit against Bernard Marden for his alleged actions in commandeering Ross's company known as Imagemark, Inc. Ross filed a motion to substitute the Estate of Bernard Marden after Marden died. Now, the Estate of Bernard Marden moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to stay these proceedings pending the outcome of *Marden v. Ross, et al.*, Milwaukee County Circuit Court case number 09-CV-16092.

        A motion to dismiss challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As a general rule, notice pleading remains the standard. *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Services*, 536 F.3d 663, 667 (7th Cir. 2008)).

The pleading process is meant to "'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). Hence, the court gives the plaintiffs "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (quoting *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). "Together, these rules ensure that claims are determined on their merits rather than on pleading technicalities." *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide the grounds for his relief, and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.

The Estate of Bernard Marden seeks dismissal of the six count amended complaint. The breach of contract claim in count one asserts that in October of 2007, Ross and Marden entered a contract calling for Ross to render services to and not compete with Imagemark, and Marden foregoing a lawsuit or making any claim against Ross. Marden is said to have breached that contract by commencing a lawsuit against Ross in New York state court on June 10, 2008.

Count two charges that Marden tortiously interfered with a contract between Ross and the President of Imagemark whereby Ross was to be compensated for his services to Imagemark after the termination of Ross's employment. Allegedly, Marden directed Imagemark not to pay Ross.

2

Count three states that Marden dominated the business affairs of Imagemark, so that the company had no separate existence, mishandled Imagemark's finances and caused Imagemark to violate its duties to Marden, thereby causing Marden damages.

Count four charges that Marden violated Ross's right of privacy, as set forth in Wis Stat. § 995.50, by ordering that Ross be denied access to Imagemark's computer system and then sending a group of lawyers to "find dirt" in his personal e-mails, materials relating to his family, communications with Ross's lawyers, personal finances and transactions. Based on the same facts, count five alleges a violation of Wis. Stats. § 968.27(9) on the theory that Marden and his agents "intercepted" communications. Finally, count six asserts unjust enrichment because Ross conferred substantial tax benefits on Marden by transferring Imagemark stock to Marden.

The Estate of Bernard Marden argues that the statements underlying count one are formulaic, conclusory, and failed to show that Ross and Imagemark had a contract. Alternatively, the Estate maintains that, if there was an oral contract, it violated the statute of frauds and was void as a matter of public policy.

Accepting the well pleaded facts as true and drawing all inferences in Ross's favor as the court must at this stage, Ross identified an October 2007 contract between Marden and himself, including the promises made—services provided to Imagemark and a promise not to compete—in exchange for consideration. Marden allegedly agreed not to sue or otherwise make claims against Ross but thereafter filed suit in New York. These allegations alone do not indicate that the contract was incapable of being performed in one year or that the Wisconsin courts would find the agreement void as a matter of public

policy. On the other hand, these assertions provide clear notice of and state the legal basis for a claim, and, as such, Ross asserts a claim for breach of contract.

In count two of the amended complaint, Ross contends that during October of 2007, the President of Imagemark, Inc., agreed that Ross would be compensated for his services to the business at the rate of $250 per hour after Marden terminated his employment. However, Marden allegedly demanded and directed Imagemark not to pay Ross for his services.

Under Wisconsin law, tortious interference with a contract requires proof of these elements: (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the interference by the defendant was intentional; (4) there was a causal connection between the interference and damages; and (5) the defendant was not justified or privileged to interfere. *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis.2d 429, 452, 720 N.W.2d 531, 542.

The facts offered in support of count two indicate that Imagemark and Ross had a contract, that Ross performed services as required by the contract, and that Marden caused Imagemark to refuse payment for these services. No more is required to state a tortious interference claim, regardless of the Estate's argument that Ross should have brought the claim in the New York action.

Turning to count three, the court notes that it asserts an "ALTERNATIVE CLAIM AGAINST MARDEN AS THE ALTER EGO OF THE COMPANY." Essentially, count three seeks to hold Marden liable for the acts of Imagemark. However, it is unclear from the amended complaint what debts or obligations of Imagemark are at issue. To the extent that Ross is alleging that Imagemark owed him money for a contract negotiated by

4

Imagemark's President and Ross, and that Marden interfered with the contract, any alter ego theory of liability would entail proving that Marden interfered with his own contract. As a matter of law, such claim cannot stand. "Courts will allow plaintiffs to pierce the corporate veil to impose liability on a defendant who unjustly seeks protection in the corporate form. The alter ego doctrine is a sword, not a shield, the basis for a cause of action, not a defense." *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 460 (7th Cir. 1991); *see also In re Riley*, 351 B.R. 662, 671 (Bankr. E.D. Wis. July 10, 2006). Here, the Estate is the only defendant and the court is unable to glean from the amended complaint any suggestion that the Estate is shielded by a corporate veil that should be pierced in this action. The remaining allegations of the amended complaint also seek to hold Marden liable for his own conduct. Therefore, as framed, count three must be dismissed.

Counts four and five—invasion of privacy and interception of communications—survive. In Wisconsin, "invasion of privacy" means one of the following: (1) a highly offensive intrusion upon another's privacy in a place a reasonable person would consider private or in a manner actionable for trespass; (2) using, without written consent, a person's name, portrait or picture for advertising or trade; (3) giving publicity to a person's private matters "of a kind highly offensive to a reasonable person," unless the information is available to the public as a matter of public record; or (4) conduct involving depictions of nudity. Wis. Stat. § 995.50(2). Further, Wis. Stat. § 968.31(2m) creates a private right of action for any person whose wire, electronic or oral communication is intercepted, and "intercept" means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. Wis. Stat. § 968.27(9).

In the amended complaint, Ross alleges that he and his spouse used personal computers for personal and business activities even after Imagemark acquired its own computers. However, Imagemark's e-mail system used software that caused the e-mail box on the Rosses' computers to synchronize with a file on Imagemark's server each time the Rosses logged into their computer. Ross alleges that he never assigned a "policy in any way restricting their [he and his spouse's] right of privacy or ability to conduct their personal business and affairs on computers which were synchronized with a file on Imagemark's server." Allegedly, Marden barred Ross from accessing Imagemark's system and sent a group of lawyers from Milwaukee to New York to "find dirt" on Ross by accessing his personal files, including personal e-mails, materials relating to his family, communications with Ross's lawyers, and personal finances and transactions. The amended complaint adds that Ross and his spouse used their personal computers to conduct business after Imagemark acquired its own computers. Whether the facts will show that Ross maintained a privacy interest in this information is not for determination at the pleading stage. These assertions viewed in a light favorable to Ross, state an invasion of privacy and interception claim under Wisconsin law.

Finally, count six, Ross's claim for unjust enrichment, survives the motion to dismiss. Ross submits that he was induced by Marden to transfer his share of stock in Imagemark for significant tax benefits by Marden's promise that the stock would be repurchased for $1.00. After the transfer, according to the amended complaint, Marden took Imagemark's funds for personal use while the company was insolvent.

An unjust enrichment claim requires the plaintiff to prove: (1) defendant incurred a benefit from the plaintiff; (2) defendant appreciated the fact of the benefit; and

6

(3) defendant accepted and retained the benefit under terms that would make it inequitable. *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 476-77 (7th Cir. 2009). As stated, Ross's contentions sufficiently plead that defendant gained a benefit from his transfer of stock, and, if it was due to a fraudulent inducement, Marden's realization of the benefit was unjust. Thus, this claim will survive the motion to dismiss.

Turning to Marden's alternative motion, defendant requests that the court stay any claims that survive dismissal, pending litigation in Milwaukee County. Typically, federal courts have an obligation to "exercise the jurisdiction conferred on them by Congress;" however, in *exceptional* cases, a "federal court should stay a suit and await the outcome of parallel proceedings" to conserve judicial resources and give regard to comprehensive disposition of litigation. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976) (emphasis added). The federal court must not look for a reason to exercise jurisdiction, but, instead, must look for a reason to surrender jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). At this time, there is no reason to surrender jurisdiction and stay the proceedings.

Ordering a stay of proceedings in this court is appropriate only if concurrent actions are parallel. *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999). In other words, actions in other courts must include the same parties litigating substantially the same issues, and there must be "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). Additionally, any doubt regarding whether actions are parallel are to be resolved in favor of the federal court, *Truserv Corp. v. Flegles, Inc.*, 419 F.3d 584,

592 (7th Cir. 2005). Moreover, the balance weighs heavily in favor of federal court jurisdiction and finding an exceptional circumstance to grant stay is difficult. *Moses H. Cone*, 460 U.S. at 16.

Although Ross and the Estate of Marden are parties in each action—this court and the state court—it appears that the Milwaukee County case will not dispose of all of the claims alleged in Ross's amended complaint. The Milwaukee County case was filed by Marden and alleges that Ross defrauded Marden. On the other hand, this case asserts a claim for damages due to Marden's actions. Although it is true that Ross could have raised such claims as counterclaims to the Milwaukee County action, he was not required to do so. *See* MOORE'S FEDERAL PRACTICE § 122.06[2] (3d ed.). Moreover, if the actions involve different issues, remedies, and proof requirements, the actions are not parallel. *Id.*

Because the Milwaukee County case will address, and potentially remedy, only the issue of Ross's alleged fraud, it will not dispose of Ross's claims against Marden in this case. Likewise, Marden's claims in the Milwaukee County case arose prior to October 2007. Conversely, all but one of Ross's claims arose after that time period.

Furthermore, there are no exceptional circumstances justify the staying of this proceeding. For example, it is no less convenient to litigate in a federal court in Milwaukee than a state court in Milwaukee. *See Rojas-Hernandez v. Puerto Rico Electric Power Authority*, 925 F.2d 492, 496 (1st Cir. 1991). If a majority of the witnesses reside outside Wisconsin as Ross states in his brief, protection of the parties' interests weighs in favor of this court exercising its jurisdiction inasmuch as the state courts appear to lack the authority to facilitate the depositions of such witnesses. Wis. Stat. § 887.26. Finally, and notably,

the discovery that has occurred in the state court can likely be used in this case; thus, continuing this action will not constitute an additional burden on the parties, or strain judicial resources. See Fed. R. Civ. P. 32(a)(8). Lastly, in light of the court's ruling on the Estate's motion to dismiss, the motion is moot. Now, therefore,

IT IS ORDERED that defendant's motion to dismiss Counts I, II, IV, V, and VI of the amended complaint is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss Count III of the amended complaint is granted.

IT IS FURTHER ORDERED that defendant's motion to stay pending the outcome of the Milwaukee County case is denied.

Dated at Milwaukee, Wisconsin, this 24th day of March, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE